the judges pronounced their opinions.
Judge Brooke.
It is unnecessary to notice all the points that were made in this case. /The judgment of the district Court, rendered on the 12th day of April, 1803, as well as the succeeding one, rendered in 1805, are both within the time limited by law for granting writs of error and supersedeas, and, of consequence, are regularly before the Court. The validity of the first *502 judgment depends on the correctness of the judgment of the county Court, which it affirms. I admit that judgments of (he county Courts, upon summary proceedings, 0USht. t° ke construed liberally.; and I am willing, by fair inference from what is expressed therein, to make such deductions as will make them conform to the particular statute upon which they are rendered. Yet I think there is error in the judgment now in question, in this, that it is not expressly, nor by inference, adjudged by the Court that the'bastard child was likely to become chargeable to the parish ; which appears to me to be, by the act of Assembly on which the prosecution is founded, a preliminary step to any farther proceedings against the defendant, on the charge exhibited against him. A second objection to that judgment is founded on its retrospective character, by which it is made to comprehend several years preceding the commencement of the prosecution, which, (though, under some circumstances, it might be correct, as to which I shall not now give any opinion,) under the circumstances disclosed in the second bill oFexceptions, I think entirely inadmissible. It is there admitted that the bastard child had never been placed on the parish lists, but, on the contrary, had been supported by the father of its mother, without any engagement of the Overseers of the Poor respecting it. The evidence offered by the defendant, and which is stated in the first bill of exceptions, (though, according to the view I have taken, it is not material to notice,) I am inclined to think was rightfully rejected by'the county Court; for, though proof that the mother of the bastard child had had criminal intercourse with other men, nine months preceding its birth, might weaken the evidence of the mother, who' swore that the defendant was the father of the bastard child, by rendering it possible that she was mistaken; and though, generally, such evidence, according to the decision 'in the case of Da Costa v. Jones, reported in Cowper, (that indecent evidence affecting the feelings of third persons,) may be resorted to in oases in which a *503 civil or a criminal right is to be tried; yet, as it seems to he admitted, by the terms of the bill of exceptions, that the defendant, also, had had criminal intercourse with her about the same time, it was correct to confine the defendant to proof of the general character of the mother.
The judgment of the district Court, first mentioned, I am of opinion, for the’ reasons stated, .ought to be reversed, and the second judgment, being founded on that, and partaking of some of its errors, ought also to be reversed, and judgment entered for the defendant.
Judge Roane.
The judgment of the district Court, of the 12th of April, 1803, being embraced by the supersedeas now before us, which issued within five years from the time of the rendition thereof, and that judgment having affirmed the judgment of the county Court, of February 22d, 1802-, the affirmed judgment is also subjected to the power of this Court; although, otherwise, it would have been exempted, by reason of its antiquity. If that judgment shall be found to be erroneous, and be reversed, it will be unnecessary to inquire into the legality of the subsequent proceedings, which will consequently fall to the ground.
That judgment is compounded of two parts; the first relating to the past time, and the second in relation to the future instalments of the change supposed necessary for the support of the bastard.
As to the first part of that judgment, while it was conceded by the Court that the bastard had not, in fact, been supported by the county, and that no binding engagements had been entered into for that purpose, the Court deemed itself at liberty to impose the charge by way of retrospect, and to coerce the money from the appellant, when, for any thing appearing in the cause, the overseers were not compellable to pay it over for the support of the child. This appears to me to be a misconstruction of the act. That act relates only to cases in which the bastard is chargeable, or is likely to become chargeable, *504 to the county, and not to cases in which the child'is , J neither actually sustained by the county, nor has any contract, been incurred by it for that purpose. The power of the Court is only coeval with the commencement of the charge, and does not precede it. On this ground, then, the judgment is erroneous, and must be reversed; and it appearing, from the case exhibited, that no judgment ought to be rendered for the appellees, as to the previous time, the case would end here, were it not for that part of the judgment which relates to the future instalments, as to which the power of the Court not being precluded by any statement of facts proved or agreed in the case, the cause, on reversal, either for the .vice of the first part of the judgment just noticed, or for error in the judgment of the Court, in the proceedings, to the injury of the appellant, will go back to be proceeded in as to such future instalments. It is here to be remarked, that, although, in the subsequent motion on the recognisance, •made in the county Court, October 25th, 1804>, a judgment for the future instalments is waived as at the time, yet the right to move therefore, in future, is expressly reserved. There.is, consequently, a subsisting judgment as to them, which it is necessary for this Court to act upon: and this brings us to the case made by the first bill of exceptions.
It appears from that bill that, in a case in which the appellees charged, and put in issue, the fact of the appellant’s being the father of the bastard, and in which this fact was proved by the oath of the mother only, who also swore that there was no possibility of her being mistaken in that particular, the appellant was prohibited from proving that, about nine months previous to the birth of the' child, she had carnal connexion with other men. This decision of the Court was founded on the principle {as I infer from the bill) that that evidence might criminate persons not before the Court, and that no particular facts ought to be proved against the witness.
As to the last of these principles, it is, undoubtedly, a *505 general rule of evidence, that you can examine only aS to the general character of a witness, and not to particular facts; on the ground that every one is supposed capable of supporting the one, but it is not likely that he is prepared to answer the other notice.(a) It is an exception to this rule, however, that in all cases in which the general character or behaviour is put in issue, evidence of particular facts may be adiliitted; for whatever is material to the issue, each party must come prepared to prove, or to deny,(b) Thus, in actions of crim. cén.,tlie defendant may give evidence of particular facts of the wife’s adultery with others ; for, by bringing the action, the husband puts her general character in issue.(c) In the case where the character is put in issue, that character is not incidentally and collaterally brought in question, as is generally the case with respect to witnesses; and, therefore, there is no incompetency supposed to exist to repel the charges which may be brought against it.
In the case before us, the general character of the witness, the mother of the child, is emphatically put in issue. The appellees affirm that she had no commerce with another man, so as that that other man might have been the father; and the appellant ought not to suffer, if another man was, or might have been, the father of the child. You, therefore, prevent his disproving the averment of the appellees, and condemn him unheard, unless you permit him to show that another man was, or might have been, the father. The very point in issue, and the only point, was, whether he, or another, was the father of the child: and the appellant had no means of falsifying the charge brought against him, but by exhibiting the testimony which the Court rejected. As it is, in most cases, impossible for the party charged to prove, negatively, that he was not the father of the child, the rejection of the evidence, in question, would operate in all cases to promote injustice : it would be to put a charge in issue against, a man, and deprive him of the only possible means of *506 showing its falsity. Besides, that evidence seems legalized, if not called for, by the allegation of the witness, that it was impossible for any other person than the appellant to have been the father of the child.
Whatever protection the law allows a party in repelling particular charges against the character of his witnesses, when only collaterally brought in question, there is no rule of evidence which prohibits a party from showing the falsity of a fact, stated on oath by a witness, and tending to operate to his injury.
The other ground of the opinion of the Court, rejecting the testimony in question, was, that it is unjust and improper to criminate third persons by the introduction of such .testimony; meaning (I presume) the persons alleged to have had carnal connexion with the mother. It is true that the characters or feelings of third persons are neither to be sported with in a Court of justice, nor shall indecent evidence be introduced without necessity ; but, where either the one or the other becomes necessary to effectuate the purposes of justice, it must be submitted to, as the lesser of evils. This doctrine, in all its parts, is explicitly and forcibly laid down by the English Court of king’s bench, in the case of Da Costa v. Jones, Cowp. 729.
But it is supposed that this judgment, even in relation to the future instalments, is not sustainable ; because the act requires, as a preliminary, that the Court should be satisfied that the party charged is the father of the bastard, and that such bastard is likely to become chargeable to the county; which last fact, it is also supposed, is not stated as the ground and foundation of this judgment. I conceive this to be incorrect. The judgment of the Court is based upon the averment, that “ it appeared to the Court that the appellant is guilty of the charge alleged against him in the recognisance and that charge, when the recognisance is inspected, is found to be, that the appellant got the party complaining with child, “ which child is likely to become chargeable to the coun *507 ty.” Unless the charge be thus conjunctly considered, it amounts to nothing but a charge of getting her with child, which, standing singly, might be incompetent to give cognizance to the Court. Admit, however, that we were at liberty to separate and garble this charge, it ought not to be done; as every construction should be adopted to support, rather than reverse, the judgments of the Courts below. The judgment, in this case, therefore, affirms all those facts, (by referring to the recognisance,) which are necessary to give the county Court complete jurisdiction: and, therefore, the question does not arise, in this case, whether such an affirmation in the judgment be absolutely necessary. Without going at all into that question, at present, the case of Preston v. The Auditor, 1 Call, 475., is a conclusive authority that a general averment, that the necessary facts appeared to the Court, is sufficient. While this general averment in the case before us is afterwards annihilated, and done away, in relation to the previous instalments, by the particular facts, inconsistent therewith, agreed between the parties, it remains in full force as to the subsequent instalments. There is not, therefore, a vice, in this part of the judgment, which should extinguish and destroy it altogether.
My opinion, therefore, is, that the Court erred in giving judgment at all in relation to the previous instalments, for the reasons stated, and erred, to the appellant’s injury, in disallowing the rejected testimony: and that the judgment be reversed, and the cause remanded, to be proceeded in, in relation to the future instalments; in which future proceeding, the rejected evidence' ought to be admitted.
Judge Fleming.
Deeming it unnecessary, in this case, to consider whether evidence tending to criminate a person, not before the Court, be admissible or not, my opinion is formed on other grounds.
It is an uncontroverted principle of law, that, in all prosecutions on penal statutes, the strict letter of the law *508 must be pursued, and nothing admitted by inference, or implication; the proceedings in the prosecution before us, then, are erroneous from their foundation. 7 ' ' '
In an act “providing for the poor,” &c. passed, the 1 w . . 1 of December, 1792, sect. 18., it is enacted, that “ if any single woman, not being a servant or slave, shall be delivered of a bastard child, which shall be chargeable, or likely to become chargeable, to any county, and shall, upon examination before any justice of the peace, of the eounty, to be taken in writing, upon oath, charge any person, not being a servant, with being the father of such bastard child, it shall and may be lawful for any justice pf the peace of the ‘county,’ wherein the person so charged shall be a resident, or inhabitant, upon applicar tion made to him, by the Overseers of the Poor, or any one of them, of the county wherein such child shall be born, to issue his warrant for the immediate apprehending of the person sp charged as aforesaid,” (to wit, with being the rather of such bastard child,) “ and for bringing him before such justice, or before any other justice of the county,” &c. &c.
It appears from the record, that the recognisance, under which the present prosecution is carried on, is the third he has been compelled to enter into for the same pause; the first of which was dismissed op the 17th of August, 1796, the Court being of opinion that the recogr nisance was improperly taken. On a second prosecution, for the same alleged offence, the said appellant, Fall, appeared in Augusta county Court, on the 18th of October, 1796, “in discharge of his recognisance, entered into at the instance of the Overseers of the Poor; and.no person, appearing to prosecute, the said Fall is discharged.” Thus the matter rested, until the month of November, 1797, when he was carried before Mr. Justice Swoape, and compelled to enter into a third recognisance, in.which the justice states, “ that Catharine Thyvey, of the said -county, single woman, hath, by her examination, on oath, before me, declared, that on the 15th day of January, *509 2 796, last, she was delivered of a bastard child, in the county aforesaid, which is likely to become chargeable to the said county, and hath charged the above-bound Daniel Pall with having gotten her with child; now, if,” &c.: which he might have done a dozen times, and not have been liable to this prosecution; inasmuch as it is not stated that the woman ever charged him with being the father of the child aforesaid, born on the 15th of January, 1796, which the law expressly requires, to authorize a prosecution, by the Overseers of the Poor, on that statute; and, in my apprehension, no subsequent proceedings have cured, or can cure, this radical defect in the prosecution. It is a well-settled rule of law, and has been often decided by this Court, that, in common civil suits, the plaintiff must show, by averment in the declaration, a just cause of action, or it will be error, even’after verdict andjudgment.(a) How much more forcibly does the rule apply, in criminal prosecutions, under a penal statute ? The law being explicit in requiring a direct charge, upon oath, that the delinquent is the rather of such bastard child, before a prosecution can be legally commenced; and there being no such charge in the whole record, I am clearly of opinion, that the judgments in both Courts are erroneous, and ought to be reversed, and the whole proceedings quashed, and judgment entered for the defendant.

 Esp. N. P. 790.

 Ibid. 788, 790.

 Ibid. 788.

 See Moore's administrator v. Dawney, 3 H. & M. 127. Lomax v. Hord, ibid. 271. Gordon and others v. Browne's executor, ibid. 219.; abd many other cases.